AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)  ☐ Original  ☐ Duplicate Original

| LODGED |
|---|
| CLERK, U.S. DISTRICT COURT |
| 05/10/2024 |
| CENTRAL DISTRICT OF CALIFORNIA |
| BY: _____IGU_____ DEPUTY |

# UNITED STATES DISTRICT COURT
for the
Central District of California

| FILED |
|---|
| CLERK, U.S. DISTRICT COURT |
| MAY 10, 2024 |
| CENTRAL DISTRICT OF CALIFORNIA |
| BY: _____JD_____ DEPUTY |

United States of America

v.

FRANCISCO ARTURO NUNEZ-VALVERDE
and RAMON ARTURO NUNES-LEON
Defendants.

Case No.   8:24-mj-00215-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of May 9, 2004 in the county of Orange in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(2)(B)(ii) | Bringing Aliens to the United States for Private Financial Gain |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Mitchell Gangwish, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   May 10, 2024

*Karen E. Scott*
Judge's signature

City and state:   Santa Ana, California

Hon. Karen E. Scott, U.S. Magistrate Judge
*Printed name and title*

AUSA B. Yang
x3534

**AFFIDAVIT**

I, Mitchell Gangwish, being duly sworn, declare and state as follows:

## I. INTRODUCTION

1. I am a Special Agent ("SA") with the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), and have been so employed since May of 2022. I am currently assigned to the HSI Los Angeles Border Enforcement Task Force Maritime ("LA BEST Maritime"). My responsibilities include investigating violations of federal and state criminal laws, including crimes involving maritime smuggling, drug trafficking, money laundering, fraud, and immigration violations in the Central District of California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia, where I completed the Basic Criminal Investigator Training Program and the HSI Special Agent Training Program. I received formal training in the investigation of violations investigated by HSI, including drug crimes and contraband smuggling. I was previously employed with ICE under Enforcement and Removal Operations as a Deportation Officer from May 2016 until May 2022. Prior to ICE I served in the United States Marine Corps from September 2008 until September 2013.

## II. PURPOSE OF AFFIDAVIT

2. This affidavit is made in support of a criminal complaint against, and arrest warrant for, FRANCISCO ARTURO NUNEZ-VALVERDE and RAMON ARTURO NUNES-LEON for a violation of

Title 8, United States Code, Section 1324(a)(2)(B)(ii): Bringing Aliens to the United States for Private Financial Gain.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrants and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only, and all dates and times are on or about those indicated.

### III. SUMMARY OF PROBABLE CAUSE

4. On May 9, 2024, at approximately 04:40 a.m., Customs and Border Protection (CBP) Special Enforcement Group (SEG) detected a human smuggling event during a surveillance operation at Crystal Cove State Beach, in Newport Beach, California.

5. CBP Officer (CBPO) Mata heard a loud revving sound consistent with a pleasure craft hitting shallow water and land. Upon closer observation, CBPO Mata observed a beached pleasure craft from approximately 50 yards away. CBPO Mata observed multiple people running away from the vessel and running off the beach and into the state park.

6. CBPO Mata relayed the information to the rest of his team via radio.

7. This activity is consistent with maritime human smuggling events that have occurred along the California coast.

8. CBP SEG and Air Marine units saturated the area and detained all 17 undocumented non-citizens (UNCs) believed to have fled the smuggling event and identified the captains as FRANCISCO ARTURO NUNEZ-VALVERDE and RAMON ARTURO NUNES-LEON.

9. All UNCs, NUNEZ-VALVERDE, and NUNES-LEON, were arrested and transported to the United States Border Patrol (USBP) San Clemente Station for processing and interviews.

## IV. STATEMENT OF PROBABLE CAUSE

10. On May 9, 2024, CBPOs assigned to the Long Beach SEG were on duty in plain clothes and in unmarked CBP vehicles. CBPOs were conducting coastal security operations in the Crystal Cove California State Park area located in Newport Beach, California.

11. At approximately 4:40 a.m., CBPO Mata heard a loud revving sound consistent with a pleasure craft hitting shallow water and land. CBPO Mata stepped out of his vehicle and observed a beached pleasure craft from approximately 50 yards away. CBPO Mata observed multiple people running away from the vessel and running off the beach and into the state park.

12. The observed activity was consistent with maritime human smuggling events that have occurred along the California coast.

13. CBPO Mata relayed the information to the surveillance units via radio. Multiple units from Air and Marine (AMO), Marine Interdiction Agents (MIA), and SEG saturated the area.

14. Laguna Beach Police department and the California Park Rangers deployed unmanned aircrafts to help assist with the search and rescue.  AMO also provided air support.

15. CBP Officers along with CBP MIAs from the Long Beach Marine Unit were able to find and detain 17 subjects.  After the subjects were detained, CBPO Ruiz conducted an immigration check of the individuals to determine if they possessed proper documents to be in the United States, their nationality and place of birth, and their legal status to be in the country.

16. All subjects were determined to be undocumented non-citizens.

17. All subjects were taken into custody by CBP and transported to the San Clemente Border Patrol Station for processing.

Interview of Defendant RAMON ARTURO NUNES-LEON

18. On May 9, 2024, at approximately 5:50 p.m., I and CBPO Steve Martinez interviewed RAMON ARTURO NUNES-LEON.  NUNES-LEON waived his Miranda rights and was advised of his consular rights.  NUNES-LEON stated he was born in San Felipe, Mexico in 1994.  NUNES-LEON stated he did not have legal documentation that permitted him to be in the United States.  NUNES-LEON stated he entered the United States on today's date by boat.  NUNES-LEON stated he was the motorist, which is known as the driver.  NUNES-LEON stated he intended to go back to Mexico after the smuggling trip.  NUNES-LEON stated he is a fisherman.

19. NUNES-LEON stated he agreed to drive the boat for monetary compensation. NUNES-LEON stated he would receive approximately 500 U.S. dollars per person. NUNES-LEON stated he met the coordinators somewhere in San Felipe, Mexico. NUNES-LEON stated he had previously attempted to smuggle persons by boat approximately four times before. NUNES-LEON stated he was apprehended each time.

20. NUNES-LEON stated he knew the other passengers on the boat were illegal. NUNES-LEON stated he was given a Global position device and utilized it to drive the boat.

21. NUNES-LEON stated he and his father FRANCISCO ARTURO NUNES-VALVERDE were the only drivers on the boat. NUNES-LEON was shown a photographic line up of the passengers and identified himself as number 13.

<u>Interview of Defendant FRANCISCO ARTURO NUNEZ-VALVERDE</u>

22. On May 9, 2024, at approximately 7:22 p.m., I and CBPO Steve Martinez interviewed FRANCISCO ARTURO NUNEZ-VALVERDE. NUNEZ-Valverde waived his Miranda rights and was advised of his consular rights. NUNEZ-VALVERDE stated he was born in Mexico in 1975. NUNEZ-VALVERDE stated he did not have legal documentation that permitted him to be in the United States. NUNEZ-VALVERDE stated he entered the United States on today's date by boat. NUNEZ-VALVERDE stated he was the motorist, which is known as the driver, and that he was in charge. NUNEZ-VALVERDE stated he intended to go back to Mexico after the smuggling trip.

23. NUNEZ-VALVERDE stated he did not know who the coordinators were, but that he met a man in Ensenada, Mexico

that offered to pay him 500 U.S. dollars per body. NUNEZ-VALVERDE stated this smuggling trip was the second time he had driven a boat in a smuggling event.

24. NUNEZ-VALVERDE stated he knew the other passengers on the boat were illegal. NUNEZ-VALVERDE stated he had a Global position device and used it to navigate the boat. NUNEZ-VALVERDE stated he also had a mobile device he utilized to communicate with the coordinators but threw it in the ocean when the boat landed.

25. NUNEZ-VALVERDE stated he and his son, RAMON ARTURO NUNES-LEON were the only drivers on the boat. NUNEZ-VALVERDE was shown a photographic line up of the passengers and identified himself as number 4.

<u>Interview of Material Witness Jesus Eduardo GOMEZ-Olmos</u>

26. On May 9, 2024, at approximately 8:31 p.m., CBPO Perez and CBPO Starling interviewed Material Witness Jesus Eduardo GOMEZ-Olmos at the San Clemente Border Patrol Station in San Clemente, California. GOMEZ-Olmos waived his Miranda rights and was advised of his consular rights. GOMEZ-Olmos stated he was born in Mexico in 2001. GOMEZ-Olmos stated he did not have legal documents that allowed him to remain in the United States. GOMEZ-Olmos stated his final destination was Oxnard, California to be with family.

27. GOMEZ-Olmos stated he arranged for his smuggling trip with a man named "Gordito" in Ensenada. GOMEZ-Olmos stated he did not know him personally and had only spoken to him by phone. GOMEZ-Olmos stated he was going to pay 11,000 U.S. dollars to be

smuggled by boat. GOMEZ-Olmos stated he left Mexico at approximately 6 p.m. on Monday night.

28. GOMEZ-Olmos was shown a photographic lineup of the passengers on the panga. GOMEZ-Olmos identified himself as number 8. GOMEZ-Olmos identified the drivers as number 4 and number 13. Photograph number 4 depicted FRANCISCO ARTURO NUNEZ-VALVERDE. Photograph number 13 depicted RAMON ARTURO NUNES-LEON.

29. GOMEZ-Olmos stated he was not provided a life jacket while on board and that it would cost 500 pesos. GOMEZ-Olmos stated he was scared during the boat ride because the weather and boat conditions were poor.

Interview of Material Witness Jose Alfredo GRACIA

30. On May 9, 2024, at approximately 5:54 p.m., CBPO Perez and CBPO Kolbeck interviewed Material Witness Jose Alfredo GRACIA at the San Clemente Border Patrol Station in San Clemente, California. GRACIA waived his Miranda rights and was advised of his consular rights. GRACIA stated he was born in Mexico on March 5, 1983. GRACIA stated he did not have legal documents that allowed him to remain in the United States. GRACIA stated his final destination was Los Angeles, California.

31. GRACIA stated he made arrangements to be smuggled by boat in Tijuana, Mexico. GRACIA stated he was picked up in Tijuana after his last failed attempt at entering the United States. GARCIA stated the taxi driver took him to an apartment where he resided for approximately one month to go onto this smuggling trip. GRACIA stated he was going to pay 16,000 U.S.

dollars to be smuggled. GRACIA stated he boarded the boat around 6 p.m. on Monday evening.

32. GRACIA was shown a photographic lineup of the passengers on the boat. GRACIA identified himself as number 17. GRACIA identified the drivers as number 4 and number 13. Photograph number 4 depicted FRANCISCO ARTURO NUNEZ-VALVERDE. Photograph number 13 depicted RAMON ARTURO NUNES-LEON.

<u>Interview of Material Witness Arnulfo Ismael HUERTA-Gallegos</u>

33. On May 9, 2024, at approximately 7:22 p.m., CBPO Perez and CBPO Kolbeck interviewed Material Witness Arnulfo Ismael HUERTA-Gallegos at the San Clemente Border Patrol Station in San Clemente, California. HUERTA-Gallegos waived his Miranda rights and was advised of his consular rights. HUERTA-Gallegos stated he was born in Guerrero Negro, Mexico on December 18, 2001. HUERTA-Gallegos stated he did not have legal documents that allowed him to remain in the United States. HUERTA-Gallegos stated his final destination was California.

34. HUERTA-Gallegos stated he made arrangements to be smuggled by boat in Ensenada, Mexico. HUERTA-Gallegos stated he was helped by a family member. HUERTA-Gallegos stated he was going to pay 17,000 U.S. dollars to be smuggled. HUERTA-Gallegos stated he boarded the boat sometime Monday evening. HUERTA-Gallegos stated he was very dizzy and was throwing up during the voyage because the boat was moving fast.

35. HUERTA-Gallegos was shown a photographic lineup of the passengers on the boat. HUERTA-Gallegos identified himself as number 6.

## V. CONCLUSION

36. For all the reasons described above, there is probable cause to believe that FRANCISCO ARTURO NUNEZ-VALVERDE and RAMON ARTURO NUNES-LEON violated Title 8, United States Code, Section 1324(a)(2)(B)(ii): Bringing Aliens to the United States for Private Financial Gain.

/s/
Mitchell Gangwish, Special Agent
Homeland Security Investigations

Subscribed to and sworn before me
This 10th day of May 2024.

HONORABLE KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE